IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| KEITH W. BLOYD, } | |
| } | |
| Plaintiff, } | |
| } | |
| v. } | Case No.: CV 02-P-1780-NE |
| } | |
| UNITED STATES OFFICE OF } | |
| SPECIAL COUNSEL, } | **ENTERED** |
| } | |
| Defendant. } | AUG 2 4 2004 |

## MEMORANDUM OPINION

The court has before it Defendant's Motion for Summary Judgment (Doc. # 7) filed June 30, 2003. The motion is fully briefed and was under submission, without oral argument, as of August 20, 2003. (Doc. # 16).

Plaintiff Keith W. Bloyd has brought this case against the United States Office of Special Counsel ("OSC") under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et seq.*, alleging that OSC conducted an inadequate review of his termination complaint. (Doc. # 1). Plaintiff requests that this court declare that Defendant has violated the APA and the Civil Service Reform Act of 1978 ("CSRA") and compel OSC to further investigate his complaint. (Doc. # 1).[1] For the reasons outlined below, Defendant's Motion for Summary Judgment is due

---

[1] Defendant assumes that Plaintiff's requests to compel the OSC to perform certain acts are actually requests for writs of mandamus pursuant to 5 U.S.C. 1361. (Doc. # 15). However, Plaintiff makes clear that he did not intend to invoke the Mandamus Act in this case and that he believes it to be "irrelevant." (Doc. # 10, at 1-2). Regardless, relief in the form of mandamus is not available in this case. "Three elements must exist before mandamus can issue: (1) the plaintiff must have a clear right to the relief, (2) the defendant must have a clear duty to act, and (3) no other adequate remedy must be available." *Jones v. Alexander*, 609 F.2d 778, 781 (5th Cir. 1980); *see also Cash v. Barnhart*, 327 F.3d 1252, 1257 (11th Cir. 2003) (adopting the *Jones* test in this Circuit). The Eleventh Circuit has found that, because the CSRA provides other adequate remedies, mandamus is not available to a party challenging an action under the CSRA. *Stephens v. Department of Health and Human Services*, 901 F.2d 1571, 1571 (11th Cir. 1990).

to be granted because there are no disputed issues of material fact and Defendant has demonstrated that it is entitled to judgment as a matter of law.

## I.  Legal Standards for Evaluating a Summary Judgment Motion

Summary judgment is an integral part of the Federal Rules of Civil Procedure and is the prescribed manner by which claims which do not involve genuine issues of material fact should be resolved. Fed. R. Civ. P. 56. The fact that the parties do not agree on every fact is not significant. The law requires only that "there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A factual dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 251. Whether a fact is material is determined by the substantive law applicable to a particular case. *See Anderson*, 477 U.S. at 248. Although the nonmovant is entitled to justifiable inferences from the undisputed facts, he cannot rest upon his pleadings. Rule 56(e) provides,

> When a motion for summary judgment is made and supported as provided in this rule, and adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

## II.  Relevant Undisputed Facts[2]

OSC is an independent investigative and prosecutorial agency that investigates federal civil service employees' complaints of prohibited personnel practices ("PPP"). 5 U.S.C. §§ 1212(a)(2). OSC was created by the CSRA, which provides,

---

[2] If facts are in dispute, they are stated in the manner most favorable to the Plaintiff. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

> The Special Counsel shall receive any allegation of a prohibited personnel practice and shall investigate the allegation to the extent necessary to determine whether there are reasonable grounds to believe that a prohibited personnel practice has occurred, exists, or is to be taken.

5 U.S.C. § 1214(a)(1)(A). If OSC has reasonable grounds to believe that a PPP has occurred, exists, or is about to be taken, then it may recommend that the employee's agency take corrective action and, if the agency refuses, OSC may petition the Merit Systems Protection Board (the "Board") to order appropriate corrective action. 5 U.S.C. §§ 1214(b)(2)(B), (C). OSC may also file a complaint with the Board seeking disciplinary action against any federal employee charged with committing a PPP. 5 U.S.C. § 1215(a)(1).

If, however, OSC does not have reasonable grounds to believe a PPP has occurred, exists, or is about to be taken, it provides a written status report (a "pre-determination letter") to the complainant, outlining "proposed findings of fact and legal conclusions" and providing a sixteen-day period in which the complainant may submit a written response and any additional information in support of the complaint. 5 U.S.C. § 1214(a)(1)(D). Complainants may also telephone the Examiner assigned to their cases to discuss their allegations. Thereafter, if OSC determines that it has not received information sufficient to support a change in the initial determination, a second letter is sent to the complainant summarizing relevant facts and law, addressing any comments submitted by the complainant in response to the pre-determination letter, and informing the complainant that the matter has been closed. 5 U.S.C. § 1214(a)(2)(A).[3]

---

[3] Unless the complaint alleges reprisal for whistleblowing, which it did not in this case, no further administrative review of PPP complaints is available. 5 U.S.C. §§ 1214(a)(3), 1221. Although Plaintiff did submit a complaint to the OSC alleging that his termination was in reprisal for whistleblowing activity, *that PPP complaint is not part of this case*. (Doc. # 8, Ex. 25-A). After no reply or additional evidence was received from Plaintiff, the whistleblowing activity PPP complaint was also closed. (Doc. # 8, Exs. 25-B, 25-C). Upon closure of that complaint, Plaintiff had the option of filing an individual right of action with the Board pursuant to 5 U.S.C. § 1221.

A.   **Plaintiff's PPP Complaint**

On August 13, 2001, Plaintiff was hired as a civilian Auditor at the U.S. Army Audit Agency, Redstone Arsenal, Huntsville, Alabama, ("USAAA"). (Doc. # 8, Exs. 7-8). During his first performance appraisal, Plaintiff was warned that he was deficient in his ability to analyze data and weak in his communication skills and his understanding of audit standards. (Doc. # 8, Ex. 8). After receiving that feedback, Plaintiff received a "Failed" rating on his second performance appraisal in the objectives of "Analysis and Documentation." (Doc. # 8, Ex. 8). Accordingly, on April 30, 2002, during his probationary period, Plaintiff was terminated from USAAA for failing to meet the performance standards for his position. (Doc. # 8, Exs. 2, 7).

On May 9, 2002, Plaintiff filed a complaint with the OSC alleging that his termination was a PPP in violation of 5 U.S.C. § 2302(b)(12) and requesting that OSC seek a stay of his termination. (Doc. # 8, Ex. 7).[4] Section 2302(b)(12) provides that:

> Any employee who has authority to take, direct others to take, recommend, or approve any personnel action, shall not, with respect to such authority, take or fail to take any other personnel action if the taking of or failure to take such action violates any law, rule, or regulation implementing, or directly concerning, the merit principles contained in section 2301 of this title.

5 U.S.C. § 2302(b)(12). Plaintiff alleged that the USAAA violated Regulation 600-21, Chapter 8 (the "Regulation"), by failing to provide him with required on-the-job training ("OJT"). (Doc. # 8, Ex. 7).[5] Plaintiff claimed that USAAA did not maintain an OJT record for him, he was

---

[4] Although Plaintiff's complaint also mentions his intent to file a discrimination complaint with the EEOC, no discrimination claims are part of this case. (Doc. # 1).

[5] The Regulation defines "OJT" to include supervised guidance and assistance and states that assigned tasks should be recorded on the OJT Plan and Record. (Doc. # 8, Ex. 19). It also required that, during an audit, a supervisor or lead auditor should have periodic discussions with the auditor about his or her progress. (Doc. # 8, Ex. 19). Plaintiff alleges the Regulation implements or directly concerns the following codified merit system principles:

denied requested training, and he did not receive adequate guidance. (Doc. # 8, Ex. 7).

OSC received the Plaintiff's complaint on May 10, 2002, and an Examiner was assigned to Plaintiff's case. (Doc. # 8, Exs. 15, 16). On May 14, 2002, the Examiner informed Plaintiff that she had completed the investigation and made a preliminary determination to close the matter because there was no proof that Plaintiff had not been provided OJT training consistent with the Regulation. (Doc. # 8, Ex. 17). Because the OSC found no reasonable grounds to believe that a PPP had been or was about to be committed, it could not seek a stay from the Board. (Doc. # 8, Ex. 17). Plaintiff was informed that he had sixteen days to submit a written response before a final decision to close the file would be made, and that he could request an opportunity to discuss the complaint with the Examiner by telephone if he wished. (Doc. # 8, Ex. 17). Thereafter, on May 17, 2002, OSC received a letter from Plaintiff providing supplemental information and evidence. (Doc. # 8, Exs. 18-21).

B.   **Evidence Submitted by Plaintiff in Support of His PPP Complaint**

Plaintiff attached to his May 9, 2002, PPP complaint the following exhibits: (1) a March 5, 2002 supervisor's review of Plaintiff (Doc. # 8, Ex. 10); (2) a March 26, 2002 supervisor's review of Plaintiff (Doc. # 8, Ex. 11); (3) a statement written by Plaintiff (Doc. # 8, Ex. 12); (4) an April 25, 2002 formal written supervisory evaluation of Plaintiff (Doc. # 8, Ex. 13); (5)

---

(6) Employees should be retained on the basis of the adequacy of their performance, inadequate performance should be corrected, and employees should be separated who cannot or will not improve their performance to meet required standards.

(7) Employees should be provided effective education and training in cases in which such education and training would result in better organizational and individual performance.

5 U.S.C. §§ 2301(b)(6), (7).

Plaintiff's notes of conversations with supervisors and co-workers between September 17, 2001, and February 1, 2002 (Doc. # 8, Ex. 14); and (6) an April 30, 2002 Notice of Termination During Probationary Period for unsatisfactory performance. (Doc. # 8, Ex. 8). Plaintiff also submitted the following supplemental evidence on May 17, 2002: (1) a copy of the Regulation (Doc. # 8, Ex. 19); (2) his OJT Training Plan and Record (Doc. # 8, Ex. 20) and (3) a sample OJT training plan from an appendix to the regulation. (Doc. # 8, Ex. 21).

On May 18, 2002, Plaintiff sent a letter to OSC criticizing its procedures and conclusions and requesting a telephone appointment to discuss his case with the Examiner. (Doc. # 8, Ex. 22). The Examiner spoke with Plaintiff on May 22, 2002, and scheduled a telephone conference for May 28, 2002. (Doc. # 8, Ex. 23). Plaintiff was to initiate the call, but he failed to contact the Examiner on the morning of May 28, 2002. The Examiner telephoned Plaintiff later that morning and spoke with his wife, who reported that Plaintiff was out running errands and agreed to have him call the Examiner. (Doc. # 8, Ex. 23).

Plaintiff did not contact the Examiner and no additional information was provided in support of the allegations in his PPP Complaint. By letter dated May 29, 2002, the Examiner informed Plaintiff that he had provided no additional information to justify a change in her preliminary conclusions and that the case was now closed. (Doc. # 8, Ex. 24).

C.   **Plaintiff's Allegations in this Case**

Plaintiff filed a complaint in this court against the OSC on July 22, 2002, alleging that Defendant failed to properly investigate his allegations, that OSC failed to consider the documentary evidence Plaintiff submitted (specifically his OJT Record), and that OSC failed to provide the required summary of relevant facts in its written statement to Plaintiff notifying him of its decision to terminate its investigation. (Doc. # 8, Ex. 2). Plaintiff contends that this Court

has jurisdiction under the APA to review OSC's decision and its investigation, and requests that this Court declare that Defendant has violated the APA, compel OSC to consider Plaintiff's OJT Record, compel OSC to investigate his PPP Complaint, and declare that OSC violated § 1214 (a)(2)(A)(ii) by not providing an appropriate summary of the facts about Plaintiff's allegations. (Doc. # 8, Ex. 23).

Plaintiff failed to attend his deposition, noticed for January 14, 2003. (Doc. # 8, Exs. 1-6). Plaintiff also failed to respond to Defendant's Combined Discovery. (Doc. # 8, Exs. 4, 6).

### III.    Applicable Substantive Law and Discussion

Defendant maintains that the APA does not provide this Court with jurisdiction to review Defendant's decision to terminate its investigation of Plaintiff's PPP Complaint. (Doc. # 15, *citing United States v. Fausto*, 484 U.S. 439 (1988)). Alternatively, Defendant argues that the undisputed facts demonstrate that it properly exercised its discretion under 5 U.S.C. 1214(a)(1)(A) in investigating and closing Plaintiff's PPP Complaint. (Doc. # 15).

In opposition to Defendant's motion for summary judgment, Plaintiff submits his affidavit with attached evidence. (Doc. # 9).[6] Plaintiff argues that this court has jurisdiction to

---

[6] One of the exhibits to Plaintiff's affidavit is entitled "On the Job Training Plan and Record." (Doc. # 9, Ex. C). It appears to be identical to the "On the Job Training Plan and Record" submitted by Defendant (Doc. # 8, Ex. 20), *except that* Defendant's document is labeled "Controlled Copy" and contains notations and initials in the "Completed" column indicating that Plaintiff received training on certain dates, while Plaintiff's document lacks both. (*Compare* Doc. # 8, Ex. 20 *with* Doc. # 9, Ex. C). As part of Plaintiff's affidavit in opposition to summary judgment, he claims that the attached "virtually blank" OJT Record demonstrates that he received no training and thus proves his claim that OSC did not adequately investigate his complaint. (Doc. # 9, at 4). Plaintiff offers no explanation why the document he submitted in opposition to summary judgment differs from that submitted by Defendant. The court is even more perplexed by the differences in these two documents given that, when Plaintiff filed his initial complaint with OSC, he attached an OJT Record and specifically noted that he had written the words "Controlled Copy" on *his* copy of the OJT record because he suspected that his employer might tamper with the evidence and manipulate his OJT Record in their favor. (Doc. # 18). As noted above, the OJT Record submitted by Defendant – which includes notations that training was completed – contains the words "Controlled Copy" on every page. (Doc. # 8, at Ex. 20). The document submitted by Plaintiff does not. (Doc.

review the "adequacy of the investigation" and clarifies that he does not seek judicial review of the merits of his case. (Doc. # 9, at 1-2).[7] Plaintiff argues the following: (1) OSC failed to conduct an adequate inquiry because the facts, conclusions, and findings of the OSC are "wrong and unsupportable, but more importantly, they are irrelevant," and (2) the investigator was biased as indicated by his "patronizing attitude and because the investigator relied too heavily upon management and seemed to be siding with management." (Doc. # 9, at 1-4).[8]

The APA provides judicial review for persons adversely affected by agency action "(a)...except to the extent that - (1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U.S.C. § 701(a). In this case, the court finds that judicial review of OSC's decision to terminate the investigation of Plaintiff's complaint is precluded both because (1) courts have interpreted the CSRA to preclude judicial review and (2) OSC's decision to terminate the investigation of Plaintiff's complaint was a matter of discretion and judicial review is not available with respect to the exercise of such agency discretion.

A. **Courts Have Precluded Judicial Review of CSRA Claims**

Where a statute is silent on the issue of judicial review – as is the CSRA – the extent to which a statute may preclude judicial review is determined from the structure and objectives of

---

# 9, Ex. C). Needless to say, the court's suspicions have been piqued. However, the court need not delve further into this matter because the court does not have jurisdiction to consider Plaintiff's claims, as outlined *infra*.

[7] Plaintiff's opposition also claims that "[USAAA]'s training process/program violates these merit principles especially when it comes to probationary employees (trainees). The USAAA's training program/plan is completely flawed, administered by incompetent trainers, and based entirely on "star chamber-like" proceedings and methods." (Doc. # 9, at 4). Despite Plaintiff's vociferous protests, this is not an issue properly before the court.

[8] Plaintiff specifically challenges the following OSC findings: (1) that the OJT need not be certified in writing and (2) that the OSC "did not believe that we could prove that you had not been given the on-the-job training consistent with the Audit Agency regulation that required OJT." (Doc. # 9, at 3-4).

the statutory scheme and the legislative history of the statute. *Block v. Community Nutrition Institute*, 467 U.S. 340, 345 (1984). Both the Supreme Court of the United States and the Eleventh Circuit have consistently found that no implied right of judicial review may be inferred from the CSRA. *Fausto*, 484 U.S. 452 (holding that the comprehensive nature of the CSRA evidenced a Congressional intent to exclude administrative and judicial review not provided in the CSRA); *Stephens v. Department of Health and Human Services*, 901 F.2d 1571, 1574-75 (11th Cir. 1990) ("The [Supreme Court] faced head on the argument that pre-CSRA statutes and case law would have provided the employee with review and rejected the contention outright."). The Eleventh Circuit has made clear that the administrative remedies available under the CSRA constitute the exclusive remedy available to federal employees challenging personnel actions covered by the Act. *Stephens*, 901 F.2d at 1575. Thus, summary judgment is appropriate because the CSRA precludes judicial review of claims falling under the CSRA and the APA cannot confer jurisdiction on this court to review the OSC's decision in this case.

  **B.**  **OSC's Decision to Terminate the Investigation of Plaintiff's Complaint Was Discretionary**

  Moreover, this court lacks jurisdiction to review the OSC's discretionary decision to terminate its investigation of Plaintiff's complaint. OSC's statutory obligation is to "investigate the allegation to the extent necessary to determine whether there are reasonable grounds to believe that a prohibited personnel practice has occurred...." 5 U.S.C. § 1214(a)(1)(A) (emphasis added). Congress did not specifically define the scope of the necessary investigation, but left that determination to the *discretion* of the agency.

> The plain language of the statute and the legislative history clearly indicate that while the scope of an initial OSC investigation need only be extensive enough to determine whether there are reasonable grounds to believe a [prohibited personnel practice] has occurred [s]ome preliminary inquiry will be necessary to determine whether a charge

warrants a thorough inquiry. [Citation to legislative history omitted.] *Wren v. Merit Systems Protection Board*, 681 F.2d 867, 874 (D.C. Cir. 1982). Thus, while "some kind of inquiry into the merits of an allegation . . . is a non-discretionary aspect of the OSC's statutory responsibility . . . , Congress obviously meant the OSC to have authority to dismiss claims which are groundless and frivolous on their face...to weed out the unmeritorious ones." *Wren*, 681 F.2d at 875.

"It is [] quite clear from the statutory language and corresponding legislative history that Congress did not mean to make the OSC's decision to terminate or conduct an investigation . . . reviewable on the merits." *Wren*, 681 F.2d 875, fn. 9. OSC is required only to provide "a brief notification of the summary reasons" for terminating the investigation, *Wren*, 681 F.2d 874, and the court's review is limited to that issue.

Accordingly, this court may only determine if OSC met its nondiscretionary burden to conduct an investigation and to provide a brief notification of the summary reasons for terminating the investigation under the *Wren* standard. Review of OSC's exercise of its investigative discretion is "limited, at most, to insuring compliance with the statutory requirements of an inquiry into employee allegations." *Borrell v. United States Int'l Comm. Agency,* 682 F.2d 981, 988 (D.C. Cir. 1982).

Plaintiff's claims in this case – that OSC failed to properly investigate his PPP complaint, failed to consider documentary evidence he submitted, and failed to state reasons for and against OSC's conclusions – go far beyond the *Wren* standard. There is no dispute that OSC conducted an investigation into Plaintiff's complaint and provided a written summary of facts and reasons for terminating that investigation in accordance with 5 U.S.C. § 1214(a)(1)(A). (Doc. # 8, Ex. 17). The Examiner not only investigated Plaintiff's complaint by reviewing his written

submission, (Doc. # 8, Ex. 17), but she also spoke with Plaintiff by telephone about his allegations. (Doc. # 8, Ex. 26). The Examiner's letter addressed each of Plaintiff's allegations, summarizing relevant facts both supporting and opposing Plaintiff's allegations and citing relevant statutory and regulatory standards. (Doc. # 8, Ex. 17). Moreover, when Plaintiff submitted additional evidence in support of his complaint, the Examiner arranged for another telephonic meeting to discuss her initial conclusions with Plaintiff. Plaintiff – not the OSC – failed to participate in the conference. The Examiner nonetheless reviewed and considered the additional evidence and determined that it did not change the determined outcome. (Doc. # 8, Exs. 18-22, 24).

This court cannot second-guess the OSC's discretionary decision. The law of this Circuit makes clear that, while some investigation must be conducted, OSC has the discretion to determine the extent of the investigation necessary to determine whether reasonable grounds exist to believe that a PPP has been committed. In this case, OSC conducted an investigation of Plaintiff's PPP complaint, determined that no PPP had been committed, terminated its investigation pursuant to 5 U.S.C. § 1214 (a)(2)(A), and provided Plaintiff a brief notification of the summary reasons for terminating the investigation. Accordingly, this court is without authority to further review Plaintiff's complaint.[9]

---

[9] Regardless, the court notes that OSC had ample evidence – most of which was submitted by Plaintiff – to warrant its termination of the investigation for lack of evidence that USAAA failed to provide Plaintiff OJT training. The following evidence demonstrates Plaintiff's performance difficulties and the USAAA's efforts to improve that performance through OJT and other guidance. Plaintiff's notes of conversations he had with supervisors and co-workers between September 17, 2001, and February 1, 2002 document the performance problems Plaintiff was experiencing and the criticisms of his work by supervisors and co-workers. (Doc. # 8, Ex. 14). Two March 2002 supervisors' reviews both note errors made by Plaintiff in the audits reviewed. (Doc. # 8, Exs. 10, 11). Plaintiff's April 25, 2002 formal evaluation rated him "failing" in one objective and "needing improvement" in two objectives and documented that the Auditor-In-Charge had previously discussed objectives with Plaintiff in August 2001 and had provided instruction and guidance on numerous other occasions. (Doc. # 8, Ex. 13). The evaluation noted, "[Plaintiff] was frequently

## IV. Conclusion

For the reasons stated above, Defendant's motion for summary judgment is due to be granted. The court finds that no genuine issues of material fact remain for trial and that Defendant is entitled to judgment as a matter of law. A separate Final Judgment will be entered.

**DONE** and **ORDERED** this 24th day of August, 2004.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE

---

asked for status updates and how his work was going. He never presented any problems when performing assigned tasks - he always said that everything was going fine." (Doc. # 8, Ex. 13). Plaintiff's written statement to the OSC listed his accomplishments from December 4, 2001, to March 20, 2002, including confirmation that he attended training on a new audit support program, and that he was able to effectively access various information technology tools providing policy, regulation, and research information. (Doc. # 8, Ex. 12). The "Controlled Copy" OJT Plan and Record submitted by Plaintiff to the OSC included a listing of designated subjects to be covered on Plaintiff's assignments, indicated that the plan was discussed with Plaintiff on October 16, 2001, included ten areas in which Plaintiff would be trained during the conduct of the audit in question, and included Plaintiff's initials indicating that training was completed in at least five of these areas. (Doc. # 8, Ex. 20). Finally, the April 30, 2002 Notice of Termination During Probationary Period for unsatisfactory performance included verification that Plaintiff attended formal audit training from October 29 to November 9, 2001, received two Job Appraisal reviews, and received OJT training consisting of oral guidance and instructions during his assignments. (Doc. # 8, Ex. 8).